## UNITED STATES v. WYMAN & .Co. (No. 755).[1]

IRON CYLINDER CONTAINING LIQUID SULPHUROUS ACID.

The evidence shows beyond question that the tank and contents were ordered by the purchasing agent of the University of Kansas. Whether the tank, though a usual covering, would be free of duty as such under paragraph 151, tariff act of 1909, *query;* but paragraph 650 of the act applies. In the broader terms employed in paragraph 650, relative to apparatus for the use of institutions of learning, there appears to be a purpose to encourage institutions of the kind, and the paragraph must receive a reasonably liberal interpretation. The cylinder here was indispensable in keeping its contents in the safe and proper way to make these contents available for scientific instruction; it must be deemed scientific apparatus, and as such free of duty.

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26392 (T. D. 31832).

[Affirmed.]

*Wm. L. Wemple,* Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

*Comstock & Washburn* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers sustaining a protest reversing assessment of duty made by the sur-

---

veyor of customs at the port of St. Louis. The merchandise in question consists of an iron cylinder containing liquid sulphurous acid. The acid was passed free, but the cylinder was assessed for duty at the rate of 30 per cent ad valorem under paragraph 151 of the tariff law of 1909, which, so far as material, reads as follows:

151. * * * Cylindrical or tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty, thirty per centum ad valorem. * * *

The goods are claimed to be free of duty under paragraph 650, contained in the free list, and reading as follows:

650. Philosophical and scientific apparatus, utensils, instruments, and preparations, including bottles and boxes containing the same, specially imported in good faith for the use and by order of any society or institution incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts, or for the use and by order of any college, academy, school, or seminary of learning in the United States, or any state or public library, and not for sale, subject to such regulations as the Secretary of the Treasury shall prescribe.

The evidence is undisputed, and shows that the tank and contents were ordered by the purchasing agent of the University of Kansas in 1909; that in the month of March the merchandise arrived at St. Louis and consisted of an iron cylinder containing liquid sulphurous acid; that this cylinder is made strong because it is under a tremendous pressure; that liquid sulphurous acid is a liquid only when subjected to tremendous pressure, otherwise it becomes a gas; that as late as February, 1911, the metal cylinder was still in the possession of the University of Kansas, containing a considerable portion of the liquid sulphurous acid originally supplied from abroad; that the amount of acid contained in the cylinder is sufficient to supply the needs of the department concerned for several years, in all probability; and that such acid is being used for scientific purposes in an educational institution, and the container is being used for scientific purposes, and for none other.

The Board of General Appraisers determined the goods to be duty free as usual covering of merchandise free of duty, finding that the cylinder in question is not an unusual covering. There can be no doubt about the correctness of this finding of fact, but were it essential to a decision of the case we would have difficulty in saying that, based upon that fact alone and in view of the provisions of paragraph 151 above cited, the cylinder in question is not subject to duty.

But it was strongly urged upon the argument that this metal container is in fact a part of a scientific apparatus as much as was the liquid sulphurous acid.

The tariff act of 1883 imposed a duty of 35 per cent upon philosophical apparatus and instruments. It contained no reference to the uses to which they were to be devoted. The test in such a case is to be made upon the appearance of the articles at importation.

In the case of Robertson *v.* Oelschlaeger (137 U. S., 436) the court found great difficulty in finding the dividing line between such articles as were to be denominated philosophical instruments and those which fell outside that description. The term "apparatus" was not much considered. The difficulty in applying the rule of the statute as it then existed will be apparent on a mere reading of the opinion in that case. It was said, in summing up:

In short, philosophical apparatus and instruments are such as are more commonly used for the purpose of making observations and discoveries in nature, and experiments for developing and exhibiting natural forces, and the conditions under which they can be called into activity; whilst implements for mechanical or professional use in the arts are such as are more usually employed in the trades and professions for performing the operations incidental thereto.

When Congress came to provide for the free entry of apparatus and instruments for use of institutions of learning it employed much broader language, as will be seen by reference to section 650, above cited, which is in all substantial respects the same as the earlier provisions for free entry of such goods.

The question arose under the act of 1890, which placed on the free list—

Philosophical and scientific apparatus, instruments, and preparations * * * imported in good faith for the use of any society or institution incorporated or established for religious, philosophical, educational, scientific, or literary purposes, or for encouragement of the fine arts, and not intended for sale.

The question was presented in the case of United States *v.* Presbyterian Hospital (71 Fed. Rep., 866), as to what articles would come under the term "scientific instruments." It was said in that case that—

In cases arising under the statute, what is or what is not such an instrument is to be determined as a question of fact, according to the nature of the thing itself, and not necessarily according to the nature of the use for which it is primarily designed or in which it is principally employed.

In the later case of *In re* Massachusetts General Hospital (95 Fed. Rep., 973), in an opinion by Colt, Circuit Judge, this case was somewhat criticized. Referring to the rule above quoted from the opinion in the Presbyterian Hospital case, Judge Colt said:

This rule of interpretation is seemingly in conflict with Robertson *v.* Oelschlaeger, where the Supreme Court adopted the rule of "principal use" rather than "intrinsic character" with respect to philosophical instruments. Further, there are practical difficulties in the way of satisfactorily determining, by the testimony of experts, whether each imported article is or is not a scientific instrument, by reason of the intrinsic character of the thing itself. Moreover, this construction does not seem to effect the purpose of the statute, which is to aid the advancement of science and the fine arts by the admission free of duty of the means or instruments necessary to that end.

In our opinion sufficient stress was not laid upon the question of the intended use by the Circuit Court of Appeals in the Presbyterian Hospital case. It would seem that the provisions of the present and earlier cognate acts were designed to meet in some measure the diffi-

culties which surrounded the court in Robertson *v.* Oelschlaeger. The evident purpose of this section was to encourage institutions of learning, and there is no reason why the section should not be given a reasonably liberal interpretation. It broadened the scope from philosophical apparatus and instruments to include philosophical and scientific apparatus, utensils, instruments, and preparations imported in good faith for the use of such societies and not for sale. It is apparent that scientific apparatus, utensils, instruments, and preparations—that is, apparatus, utensils, instruments, and preparations used for instruction in the sciences and for scientific experiments—often are, indeed it might be said in most cases are, well adapted to use for other purposes. To place such a restricted meaning that they must be distinctively adapted only to the purpose of giving instruction in science or the arts would be to defeat in large measure the purpose of this provision.

The word "apparatus" is defined by the Century Dictionary as—

An equipment of things provided and adapted as a means to some end; especially, a collection, combination, or set of machinery, tools, instruments, utensils, appliances, or materials intended, adapted, and necessary for the accomplishment of some purpose, such as mechanical work, experimenting, etc.; as, chemical, philosophical, or surgical apparatus.

The definition of "apparatus" in Webster's New International Dictionary is as follows:

2. Things provided as means to some end.
3. Hence: A collection or set of implements, or utensils, for a given work, experimental or operative; any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism.

These definitions are clearly broad enough to include any collection of things employed as a means to the end of scientific instruction, and given this construction, we think it should be held to include in this case not only the liquid sulphurous acid but the container as well. Indeed, if the liquid sulphurous acid is to be employed for a term of years, it is obvious that such a container is indispensable. It can not be released, as it would become gas. If released, it might cause a sudden and violent conversion of the liquid into gas and cause an explosion. It must therefore be used in the container in which it is imported or it must be transferred to another container of like capacity and strength. This we apprehend would be a very difficult process, and something perhaps not to be accomplished with the appliances at hand in such a place as the University of Kansas. A construction which admits this fluid content of the tank and excludes the tank itself from the provisions of this section is too narrow.

It results that the conclusion of the Board of General Appraisers that this article is entitled to free entry should be sustained.

*Affirmed.*