BEFORE THE SECOND DIVISION, APRIL 15, 1953

No. 57258.—B. R. Anderson & Co. v. United States, protest 159899–K (Seattle).

FORD, Judge:   The question involved in this case is the proper classification of certain machines which the collector classified as machines, not specially provided for, and upon which he assessed duty at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930.   Plaintiff claims said merchandise to be properly dutiable at only 15 per centum ad valorem under paragraph 372 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as "Machines, finished or unfinished, not specially provided for," other than wrapping and packaging machines and food-grinding or cutting machines.

The pertinent provisions of said paragraph 372, as modified, upon which plaintiff relies, are as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 372 | Machines, finished or unfinished, not specially provided for:<br>　　Machines for packaging pipe tobacco; machines for wrapping cigarette packages; machines for wrapping candy; and combination candy cutting and wrapping machines_____ | 10% ad val. |
| * | *　　　*　　　*　　　*<br>Other (except wrapping and packaging machines; food grinding or cutting machines; * * * )_____ | * 　 *<br>15% ad val. |
| * | *　　　*　　　*　　　*' | * 　 * |

At the trial, counsel for the plaintiff offered and there was admitted in evidence as illustrative exhibit 1, pamphlet No. 11, published, apparently, by Letson & Burpee, Ltd., of Vancouver, B. C., the exporter of the involved merchandise. The exhibit contains a picture of a machine identical to the involved machine, except that the depicted machine uses a 1-pound tall can, whereas the involved machine uses a half-pound flat tin.   "* * * the operation is identical except as to the capacity of the machine."

The plaintiff called as its first witness Guy P. Halferty, president and owner of G. P. Halferty Co., the consignee of the involved machine, who testified substantially as follows:

That the involved machine is a salmon filling machine; that its function is to take the salmon and push it into the cans, but that this machine does not close the cans; that the involved machine does not wrap or grind food and is not a cutting machine; that it is not a machine for determining the strength of material or articles in tension; that it does not shear, is not composed in part of an internal-combustion engine, and it does not make paper pulp or paper, or manufacture chocolate or confectionery. The witness also testified that the fish enter the machine from the top on the right-hand side; that the pieces of fish are fed into the top and are forced down by a little fork into the chamber, and then there are two knives that cut the fish off into the approximate weight necessary to fit a can; that the chamber is called a filling box, and from that point the fish are pressed into the can by a plunger; that from there they come out on a chute and pass on to another machine that puts the top on; that the function of the machine is to force the fish into the chamber where it is cut off to fit to the proper shape, and then a plunger forces it into the can; that the only cutting that this machine does is that it cuts off the fish at a point that fills the can; that this machine cuts the fish off in such a way as to fit the size of the can; that the article that comes out of the machine is not a complete can—"* * * by no stretch of imagination * * * because the job isn't completed; the function is not fulfilled."

On cross-examination, witness Halferty testified that he had other machinery at his plant which finished the job started by the involved machine; that the cans are usually carried by belt or conveyor into other machines, and the sealing of the tins is completed at that point; that the fish are cut lengthwise about 1⅝ inches by an entirely different machine and before they reach the involved machine; that after the fish reaches this machine it is not cut until it enters into the chamber which holds the approximate capacity of the can; that the fingers force the fish into the filling chamber, and at that point the knife cuts off the fish, and after it is cut off, the plunger then forces the fish into the can; that at that time the can is complete except for the top; that the cutting to the approximate length of the can is done inside the involved machine.

The witness further testified that at that point he would not call the can a package; that it could not be called a package until after the top is on, and that it is not formally termed a package in the trade at any time, but is called a tin of salmon; that this machine cuts the salmon off when the chamber becomes filled with salmon sufficient to fill the can; that there are two knives that cut it off at that point.

On redirect examination, witness Halferty testified that the can is carried from the involved machine by a belt to a clincher and double seamer; that the top is fastened to the can by an entirely different machine; that when the half-pound can passes out of the involved machine, it is not always completely filled with the proper amount of fish; that it is usually necessary to add to or take away; and that the adding to or taking away from the contents of the can is done by hand.

The chief liquidator at Seattle testified for the plaintiff that the involved entry was liquidated under his supervision and that the description by the examiner in red ink on the invoice reading "Packaging machine, other" was the collector's action. On cross-examination, the witness testified that there was nothing to show that this machine was a cutting machine; that they did not consider it to be a grinding machine; and that the invoice said it was a filling machine, which was amplified by the red-ink notation of the examiner.

Without any allegation or argument that the meaning of the words "wrapping and packaging machines" is ambiguous, counsel for defendant argues in its brief filed herein that it is proper for the court to consider information contained in the Digests of Trade Data in order to arrive at the meaning intended to be given the language of the statute, and cites in support thereof the case *C. H. Powell Co. et al.* v. *United States*, 34 C. C. P. A. (Customs) 29, C. A. D. 340. In the alternative, counsel for the defendant contends that should the court be of opinion that the involved machine is not a packaging machine, it is clear that it is a cutting machine and, as such, is exempt from the trade reduction granted in T. D. 51802.

For the reasons so aptly stated by this court in the case of *Yardley of London, Inc.* v. *United States*, 30 Cust. Ct. 37, C. D. 1495, we are satisfied that the involved machine does not fall within the exception in said paragraph 372, as modified, heretofore set out, for wrapping and packaging machines, and unless excluded by some other provision in said paragraph, as modified, it would appear that this machine is properly dutiable at 15 per centum ad valorem under said paragraph 372, as modified, *supra*, as alleged by the plaintiff.

The record establishes that in filling a can with fish, the forks or fingers of the involved machine force the fish into the chamber or filling box and that at this point two knives automatically cut the fish to the capacity size of the can which is in place underneath the filling chamber to receive the fish. Prior to this, the fish have been cut lengthwise to a size of approximately 1⅜ inches wide. The length of these strips would, therefore, vary according to the length of the fish being cut, and when fed into the filling chamber of this machine, these strips, of necessity, had to be cut to the proper length to fit into the can which was in position to receive it from the filling chamber.

It is clear from this record that if this machine did not contain the two cutting knives which cut the fish in the filling chamber to the proper length for the can to be filled, that the machine would not perform the function for which it was designed and manufactured. The cutting of the fish in the filling chamber to the proper length for the can into which it is to be placed, is an essential function of this machine. This fact, however, does not, *ipso facto*, make this machine a food-cutting machine and thereby except it from the benefit of the lower rate of duty granted by the trade agreement, *supra*.

While the machine involved in this case is quite different from the merchandise involved in the case of *Garrard Sales Corp.* v. *United States*, 35 C. C. P. A. (Customs) 39, C. A. D. 369, the principles announced by the Court of Customs and Patent Appeals in the *Garrard* case, *supra*, we feel, are here applicable and controlling. In the *Garrard* case, *supra*, the court stated that:

It is clear that a phonograph and a radio are two separate and distinct articles, and this court has held that two articles designed and constructed so as to be used together does not necessarily make either article a part of the other. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851.

It is also clear that the phonograph and the radio when combined in a single unit constitute a separate and distinct article which is something more than either. The addition of the radio to the phonograph added an important feature to the phonograph which created a new combination article which is not a phonograph or an article similar thereto, within the purview of paragraph 1542. See *Thoren's, Inc.* v. *United States*, 31 C. C. P. A. (Customs) 125, C. A. D. 261.

Furthermore, a combination phonograph and radio set, such as that here involved, if imported would be dutiable as an entirety and could not properly be classified either as a phonograph or a radio.

In the case of *Clutsom Machines, Inc.* v. *United States*, 21 Cust. Ct. 30, C. D. 1122, this court held that a combination weaving and knitting machine was more

than a loom, and cited in support of its conclusion the cases of *United States* v. *Julius Kayser & Co.*, 33 C. C. P. A. (Customs) 179, C. A. D. 333, and *J. W. Hampton, Jr., & Co.* v. *United States*, 24 Treas. Dec. 218, T. D. 33191. With reference to the *Hampton* case, *supra*, the court observed:

In the *Hampton* case, *supra*, it was stated that a machine which prints tickets and at the same time also records the amount received, then registers the sale, and by means of an adding mechanism records the total amount sold through the medium, is something more than or other than a printing press.

Referring to the *Kayser* case, the court observed:

The real question in the *Kayser* case, *supra*, was whether the Simplex machine which produced the fabric from which certain gloves were made was a "warp-knitting machine" or "other than a warp-knitting machine." It was therein held that the glove fabric was made on other than a warp-knitting machine.

Applying to the facts in this case, the principles announced in the *Kayser* case, *supra*, wherein it was held that the operation of interknitting the two layers of warp-knitted fabric removed the machine which produced the fabric from the status of a "warp-knitting machine," would appear to demand the conclusion that the involved machine is not a food-cutting machine. While there are factual differences and distinctions between the *Garrard* and *Kayser* cases, *supra*, and the case at bar, nevertheless, those cases embody principles and interpretations which have a compelling force in this case.

A more recent decision of this court is that of *A. Tanzi Engineering Co.* v. *United States*, 30 Cust. Ct. 4, C. D. 1490, which deals with the proper classification of a machine similar in many respects to the one here under consideration. There, the machine had two adjustable rollers which rolled dough into sheets of desired thickness for making pies, cakes, noodles, spaghetti, and so forth, and was also equipped with two sets of nonadjustable cutting rollers for use in cutting the dough sheets into strips of spaghetti and noodles. In the *Tanzi* case, *supra*, after reviewing the decisions in the *Garrard Sales Corp., supra, Thoren's, supra,* and *Clutsom Sales Corp.* cases, *supra*, this court held as follows:

By analogous reasoning, we find and hold that a machine whose primary function is that of preparing dough in the form of sheets having a rolling unit geared for that purpose, and also having incorporated therein as an integral and inseparable feature a cutting unit to be used as occasion may require, is something more than or other than a household food-cutting utensil.

The record establishes that the cutting operation performed by this machine is only one of several operations performed by this machine. For the reasons assigned and following the cited authorities, we hold the involved machine not to be included within the provision for wrapping or packaging machine, or food-cutting machines. It follows, therefore, that this machine is not excepted from the provision in said paragraph 372, *supra*, as amended, for other machines, finished or unfinished, not specially provided for, and is dutiable thereunder at the rate of 15 per centum ad valorem, as alleged by the plaintiff.

The conclusion which we have reached renders unnecessary any discussion of the contention urged upon us by counsel for defendant that we consider information contained in the Digests of Trade Data in order to arrive at the meaning intended to be given the language of the statute.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.