BEFORE THE SECOND DIVISION, APRIL 7, 1965

No. 69224.—Mannesmann-Meer, Inc. *v.* United States, protest 61/21107 (New York).

FORD, Judge: The suit listed above challenges the classification of the collector of customs of an importation described on the entry papers variously as a "complete tube welding plant," or a "tube welding machine," under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as an article having as an essential feature an electrical element or device. By virtue of this classification, the merchandise was assessed with duty thereunder at the rate of 13¾ per centum ad valorem.

Plaintiff claims the imported merchandise is properly dutiable under the provisions of said paragraph 353, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for electrical welding apparatus, instruments, or devices, and, as such, properly subject to duty at the rate of 10½ per centum ad valorem. Alternatively, plaintiff claims that, if the court overrules the claim in the protest for the entire importation, then certain portions of said importation should be classified as parts of welding apparatus, instruments, or devices, carrying the same rate of duty.

The pertinent portions of the statutes involved herein read as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, *supra:*

Articles having as an essential feature an electrical element or device, * * *:

| * | * | * | * | * | * | * |

Other (* * *) _____ 13¾% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108, *supra:*

Electrical signaling, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for_____ 10½% ad val.

The record herein consists of the testimony of one witness called on behalf of plaintiff and a schematic drawing received in evidence as plaintiff's exhibit 1. The record establishes that the importation involved herein was designed as a single machine for the sole purpose of producing cut-to-length welded tubes up to 4 inches in outside diameter. The entire machine was described as being 12 feet wide and 50 feet long, and is fed a flat rod or bar in a coil under tension at the rate of 300 to 500 feet per minute. The witness, Mr. Gaus, testified that the strip is fed through the forming mill, which forms the flat strip into an almost circular form and holds the material under tension for welding; that this forming is done by the pressure of the rollers; that the merchandise continues along and the rollers of the welding table finish putting the product together at a point where the welding contacts contact each side of the now formed end strip and are welded; that the material then continues to the cooling mill, which is designed to ease the stress and prevent the fracturing near the welded seam. The material then proceeds to the sizing mill, which removes the excessive weld and that makes it both round and exactly on size, in accordance with the API (American Pipe Institute) specifications; from the sizing mill, the tube proceeds to the cutoff device, consisting of a saw that travels with the product as it is moving and does its cutting, after which it is dropped off into a bin storage. The witness further testified that all of the imported equipment was necessary to make a complete finished welded pipe and that the imported machine is, in fact, a complete mill to manufacture a finished welded product.

It is the argument of plaintiff herein that the provision in paragraph 353 for electrical welding apparatus, instruments, and devices is indicative of the legislative intent to include every kind of welding equipment whether it is a welding tool, a machine, or a collection of machinery.

In the case of *United States* v. *Wyman & Co.*, 2 Ct. Cust. Appls. 440, T.D. 32200, the appellate court, in the course of its decision, had occasion to interpret the term "apparatus" and quoted the following dictionary definition:

The word "apparatus" is defined by the Century Dictionary as—

> An equipment of things provided and adapted as a means to some end; especially, a collection, combination, or set of machinery, tools, instruments, utensils, appliances, or materials intended, adapted, and necessary for the accomplishment of some purpose, such as mechanical work, experimenting, etc.; as, chemical, philosophical, or surgical apparatus.

The definition of "apparatus" in Webster's New International Dictionary is as follows:

> 2. Things provided as means to some end.

> 3. Hence: A collection or set of implements, or utensils, for a given work, experimental or operative; any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism.

The foregoing definitions bring within the common meaning of the term "apparatus," the term "machinery," particularly a set of machinery adapted and necessary for the accomplishment of some purpose, whether mechanical, experimental, chemical, or philosophical. It would, therefore, appear that Congress, in employing the term "apparatus," intended a broad interpretation as applicable to merchandise described in the paragraph claimed hereunder. While the imported machine performs various other necessary functions, in addition to welding, it falls within the common meaning of the term "apparatus," since the entire machine is dedicated to the making of a welded tube which, of necessity, requires welding. There appears to be no question that the provision for welding apparatus is more specific than the provision for articles having as an

essential feature an electrical element or device, *Davies, Turner & Co.* v. *United States*, 9 Cust. Ct. 242, C.D. 701.

It is also apparent that this entire apparatus was designed, imported, and used as a unit for the sole purpose of making a welded tube out of raw material. As such, it is an entirety for tariff purposes. *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T.D. 41232; *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619.

Defendant, on the other hand, contends the imported merchandise is more than a welding machine, since it performs a number of functions with welding being only one, and cites the case of *B. R. Anderson & Co.* v. *United States*, 30 Cust. Ct. 420, Abstract 57258. The *Anderson* case, *supra*, involved a salmon-filling machine, which forced fish into a chamber, cut them to the proper length to fit the can, and forced the fish into the can. The Government, in that case, contended that, by virtue of the cutting operation, the imported machine was a food-cutting machine. The court, in noting that the cutting operation was an essential function of the machine, found that it did not *ipso facto* make the article a food-cutting machine, since the cutting was only one of several operations performed by the machine. While there is some similarity between the *Anderson* case, *supra*, and the case at bar, they are clearly distinguishable. The case at bar involves the interpretation of the term, "apparatus," which, as indicated, *supra*, includes machinery. Machinery, of course, is a combination of machines for the purpose of performing a specific function which language is, of course, broader. The *Anderson* case, *supra*, did not so construe either apparatus or machinery. Accordingly, the *Anderson* case, *supra*, is not controlling herein.

In view of the foregoing and following the authorities cited herein, we find that the tube welding plant falls within the common meaning of the term welding apparatus, as claimed. To that extent, the protest is sustained. As to all other claims, the protest is overruled.

Judgment will be rendered accordingly.