United States *v.* Mannesmann-Meer, Inc. (No. 5213)*

United States Court of Customs and Patent Appeals, December 15, 1966

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Alfred A. Taylor, Jr., Sheila N. Ziff*, for the United States.
*Allerton deC. Tompkins* for appellee.

[Oral argument November 8, 1966 by Mrs. Ziff and Mr. Tompkins]

Before Worley, Chief Judge, Rich, Smith, Almond, Associate Judges, and William H. Kirkpatrick **

Almond, Judge, delivered the opinion of the court:

The United States appeals from the decision and judgment of the United States Customs Court, Second Division, in *Mannesmann-Meer*,

---

*C.A.D. 897.
**Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

*Inc.* v. *The United States*, 54 Cust. Ct. 383, Abs. 69224, holding a complete tube manufacturing plant to be properly classifiable as electrical welding apparatus, instruments or devices, under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108, at the rate of 10½ per centum ad valorem.

Appellant contends that the importation was properly classified by the Collector of Customs under the provision of paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, for articles having as an essential feature an electrical element or device, at the rate of 13¾ per centum ad valorem. Appellant alternatively contends that, if the merchandise is not dutiable as classified, it is dutiable under the provision of paragraph 372 of the same Act, as modified by T.D. 51802, at the rate of 15 per centum ad valorem.

The statutes involved are, in pertinent part, as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739:

Articles having as an essential feature an electrical element or device, * * *:

* * * * * * *

    Other (* * *) _____ 13¾% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108:

Electrical signaling, welding, and ignition apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for_____ 10½% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 51802:

* * * machine tools * * *: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

    Machine tools (except jig-boring machine tools)_____ 15% ad val.

The record consists of the testimony of one witness and a schematic drawing (exhibit 1) of the imported merchandise, introduced on behalf of plaintiff below. The testimony of the witness Gaus, who enviced thorough knowledge of the importation in issue, stands without challenge. The facts as found by the court below are amply supported by the record and in our judgment, fairly stated by that tribunal. It is established that the importation was designed as a single machine or apparatus for the sole and specific purpose of producing welded tubes up to 4 inches in outside diameter and cut to a desired length. The machine, 12 feet wide and 50 feet long, in operation is fed a flat strip from a coil under tension at the rate of 300 to 500 feet per minute. The process of manufacturing the end product, as testified to by the witness and found by the court below, consists of feeding the strip

* * * through the forming mill, which forms the flat strip into an almost circular form and holds the material under tension for welding; that this form-

ing is done by the pressure of the rollers; that the merchandise continues along and the rollers of the welding table finish putting the product together at a point where the welding contacts contact each side of the now formed end strip and are welded; that the material then continues to the cooling mill, which is designed to ease the stress and prevent the fracturing near the welded seam. The material then proceeds to the sizing mill, which removes the excessive weld and that makes it both round and exactly on size, in accordance with the API (American Pipe Institute) specifications; from the sizing mill, the tube proceeds to the cutoff device, consisting of a saw that travels with the product as it is moving and does its cutting, after which it is dropped off into a bin storage. * * *

▉ The record clearly supports the conclusion that the imported equipment, with its components functioning in combination, was necessary to produce a complete finished welded pipe and that the imported machine is, in fact, a complete mill or combination of machinery designed to manufacture a finished welded product.

Taking cognizance of the argument advanced by plaintiff below, and relied on by appellee here, that the embodiment in paragraph 353 of the terms "apparatus," "instruments," and "devices" is indicative of legislative intent to include every kind and type of electrical welding equipment, whether it be a welding tool, a machine, or a collection of machinery designed to be used together for a specific purpose, the court below cited *United States* v. *Wyman and Co.*, 2 Ct. Cust. Appls. 440, T.D. 32200, wherein that court had occasion to interpret the term "apparatus," quoting the Century Dictionary where the term is defined as follows:

An equipment of things provided and adapted as a means to some end; especially, a collection, combination, or set of machinery, tools, instruments, utensils, appliances, or materials intended, adapted, and necessary for the accomplishment of some purpose, such as mechanical work, experimenting, etc.; as, chemical, philosophical, or surgical apparatus.

Also cited is the definition of "apparatus" in Webster's New International Dictionary:

2. Things provided as means to some end.
3. Hence: A collection or set of implements, or utensils, for a given work, experimental or operative; any complex instrument or appliance, mechanical or chemical, for a specific action or operation; machinery; mechanism.

On the basis of the above cited lexicographic predicate, the court below reasoned as follows:

The foregoing definitions bring within the common meaning of the term "apparatus," the term "machinery," particularly a set of machinery adapted and necessary for the accomplishment of some purpose, whether mechanical, experimental, chemical, or philosophical. It would, therefore, appear that Congress, in employing the term "apparatus," intended a broad interpretation as applicable to merchandise described in the paragraph claimed hereunder. While the imported machine performs various other necessary functions, in addition to welding, it falls within the common meaning of the term "apparatus," since the entire

machine is dedicated to the making of a welded tube which, of necessity, requires welding. There appears to be no question that the provision for welding apparatus is more specific than the provision for articles having as an essential feature an electrical element or device, *Davies, Turner & Co.* v. *United States,* 9 Cust. Ct. 242, C.D. 701.

We think it clear, in common understanding and acceptation of the term "apparatus" with lexicographic support, that "apparatus" embraces the term "machinery" and that the latter imports a broader and more comprehensive concept than the term "machine." *John V. Carr & Son, Inc., A.W. Fenton Co., Inc.* v. *United States,* 40 Cust. Ct. 292, C.D. 1996.

The record clearly discloses that the apparatus under consideration was designed and used as a composite unit with the single purpose of taking raw material and producing therefrom a finished product, viz. a welded tube. To this end, the composite elements or parts functioned in combination. Without each successive part taking the basic material from its predecessor in the continuous process of manufacture, the apparatus would not execute its end purpose of producing a finished welded product. It was on this basis that the Customs Court, correctly we think, treated the apparatus as an entirety for tariff purposes in its application and construction of paragraph 353 as modified by T.D. 54108.

We consider applicable to the situation presented here the reasoning applied in *Altman & Co.* v. *United States,* 13 Ct. Cust Appls. 315, 318, T.D. 41232:

> * * * if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

We think the distinction between the separate entities and entirety rules is aptly drawn in *Donalds Ltd., Inc.* v. *United States,* 32 Cust. Ct. 310, 315, C.D. 1619:

> If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

We deem it pertinent to here point out that the Congress, in enacting the Tariff Act of 1930, made specific provision in paragraph 353 for

"electrical * * * welding * * * apparatus." The l a n g u a g e employed, in plain terms, and in the light of the factual situation here disclosed, snugly admits the importation under consideration, certainly far more so than the catch-all connotation inherent in "articles having as an essential feature an electrical element or device" (par. 353, as modified by T.D. 52739).

Appellant relied on below, as it does here, the case of *B. R. Anderson and Co.* v. *United States*, 30 Cust. Ct. 420, Abs. 57288, and the cases cited therein. We are not persuaded that these cases are controlling on the issue here raised. Here we are confronted with the definitive scope of such terms as "apparatus," or its synonyms "machinery" or "set of machinery," which, as we have noted, embrace an aggregate of elements or means acting in concert to accomplish an over-all specific purpose. We agree with the view expressed by the Customs Court that:

While there is some similarity between the *Anderson* case, *supra*, and the case at bar, they are clearly distinguishable. The case at bar involves the interpretation of the term, "apparatus," which * * * includes machinery. Machinery, of course, is a combination of machines for the purpose of performing a specific function which language is, of course, broader. The *Anderson* case * * * did not so construe either apparatus or machinery. Accordingly, the *Anderson* case * * * is not controlling herein.

As noted, appellant alternatively argues that if this court should find that the imported merchandise is not properly dutiable as classified, it should be found to be properly dutiable under the provision for machine tools in paragraph 372. This issue was apparently totally disregarded by the Customs Court as no mention is made of it in its decision. Appellant accordingly assigns error.

While it is true that the subject importation is a device operated other than by hand power and employs tools or means for work upon metal, nevertheless it is also an "electrical * * * welding * * * apparatus," "instrument" or "device" specifically covered by the provisions of paragraph 353, as modified. We consider apposite to this issue the language employed in *Davies, Turner & Co.* v. *United States*, 9 Cust. Ct. 242, 245, C.D. 701, wherein it is stated:

The evidence is uncontradicted that the instant machine is essentially an electrical welding machine, its other function of shaping or forming metal being incidental to that of welding the shaped metal into tubing, which is the primary purpose for which the machine was constructed and designed.

We have considered the arguments of counsel and reviewed the cases relied on to sustain the contentions asserted. We are not, however, persuaded of reversible error in the decision of the Customs Court. The judgment is, therefore, accordingly *affirmed*.