(C. D. 1306)

M. W. ZACK METAL COMPANY *v.* UNITED STATES

## United States Customs Court, First Division

(Decided February 28, 1951)

*Hogan, Frizzell & Barnes* (*Henry M. Hogan, Walter R. Frizzell,* and *Donald K. Barnes* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh* and *Richard F. Weeks,* special attorneys), for the defendant.

*Hartshorn, Thomas, Abele, Mitchell & Edelman* and *Howell Leuck* (*Arnold M. Edelman* of counsel) as *amicus curiae.*

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: Plaintiff, a dealer in virgin and secondary non-ferrous metals, imported at the port of Detroit, Mich., a zinc alloy, which was classified as a combination of chemical elements and assessed with duty at 25 per centum ad valorem under paragraph 5 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 5).[1] Claim is made for classification as zinc in slabs, dutiable at seven-eighths of 1 cent per pound, either directly under paragraph 394 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802,[2] or within the provisions of paragraph 1559 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1559),[3] either

---

[1] PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

[2] See the following table:

| Tariff Act of 1930, paragraph | Description of products | Rate of duty |
|---|---|---|
| 394 | Zinc: | |
| | In blocks, pigs, or slabs, and zinc dust | ⅞¢ per lb. |
| | In sheets | 1¢ per lb. |
| | In sheets coated or plated with nickel or other metal (except gold, silver, or platinum), or solutions | 1⅜¢ per lb. |
| 394 | Old and worn-out zinc, fit only to be remanufactured, zinc dross, and zinc skimmings | ¾¢ per lb. |

[3] PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this Act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

by similitude or as a nonenumerated article composed of more than two materials.

The case was heard and submitted before a single member of this court on circuit, under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C. (1946 ed., Supp. III) § 254). My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case somewhat similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my position in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am preparing this opinion and participating in the judgment attached thereto.

The parties agree that the zinc alloy in question is composed of approximately 95 per centum zinc, 4 per centum aluminum, and 1 per centum copper, plus a very small amount of magnesium and impurities; that the presence of the various components in the stated proportions was intentional; and that the component material of chief value is zinc.

The uncontradicted testimony of seven well-qualified witnesses, appearing on behalf of plaintiff, supports the following factual foundation.

Importation of this commodity was the result of a purchase agreement between plaintiff and the Ternstedt Division of General Motors Corp. (hereinafter referred to as "Ternstedt"). The need therefor developed from a demand for zinc, necessary to meet production schedules. Because of the shortage of "special high grade zinc" (99.99 per centum pure), ordinarily used by "Ternstedt," a substitute had to be found which resulted in the shipments in question.

The present merchandise was received in the form of slabs, plaintiff's exhibit 2-A, and is known as "Zamak," a patented trade name of the New Jersey Zinc Co. to designate die-casting material. Analysis thereof revealed that it was below specifications of the zinc alloy regularly used by "Ternstedt," so quantities of virgin zinc, aluminum, copper, and magnesium were blended with the imported substance, bringing it to "Ternstedt's" standard. To purify the mixture, a flux was sprinkled on the molten metal, and by stirring and agitation, the impurities were brought to the top and then removed by scooping and scraping, making the alloy available for the manufacture of automobile hardware, particularly door handles. In process, the material is forced by pressure into a die with cavities already cut and wherein the metallic alloy solidifies and is then removed, plaintiff's illustrative exhibit 3. It is subjected to a trimming process, plaintiff's illustrative exhibit 4, and finally plated and buffed to complete the door handle, plaintiff's illustrative exhibit 5.

Two witnesses, both engineers and employed by "Ternstedt" in technical capacities associated with die-casting research and process development, admitted that zinc, aluminum, copper, and magnesium are chemical elements, and that the product under consideration is a mixture thereof. Counsel for defendant, in their brief, point to those statements as virtual concessions, substantiating the collector's classification. But we do not accept them as such. Appearing, as they do, in the light of testimony to the effect that "everything in the world" is a mixture or a combination of chemical elements, the witnesses' opinions are taken as coming from a purely scientific standpoint. Such testimony is not entitled to controlling influence, under the well-recognized rule that in the interpretation of tariff laws, statutory language should be considered, not in the terms of science, but rather according to the common meaning (in the absence of proof of commercial designation) of the words. The principle was expressed in *Hummel Chemical Co.* v. *United States*, 29 C. C. P. A. 178, C. A. D. 189, in this way:

It is well established that in the interpretation of tariff laws words are to be taken in their commonly received and popular sense, or according to their commercial designation if that differs from the ordinary understanding of the word. *Lutz* v. *Magone*, 153 U. S. 105. It is also well established that tariff laws are not drafted in the terms of science, but in the language of commerce, which is presumptively that in common use. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436; *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 171, T. D. 37288.

Of greatest importance herein is the testimony that in commercial and industrial practice (both productionwise and saleswise), metals, chemicals, and plastics are handled in separate and distinct categories; that zinc is a chemical and also a metal; and that the present merchandise is not a combination or a mixture of chemical elements, but an alloy of metals, mechanically, not chemically, mixed.

Counsel for plaintiff, in their brief, argue that "The fact that the material is not chemically pure zinc does not take it out of the zinc classification; neither does the fact that the small additions were intentional and for the purpose of improving the working qualities of the material." Several cases are cited to support the contention, i. e., *Dejonge* v. *Magone*, 159 U. S. 562; *Langerman & Petty* v. *United States*, 75 Fed. 1; *United States* v. *Aetna Explosives Company*, 256 U. S. 402; *Sheffler Merchandise Co., Inc.* v. *United States*, 35 C. C. P. A. 63, C. A. D. 372; *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, T. D. 38374; *Bush & Co. (Inc.)* v. *United States*, 11 Ct. Cust. Appls. 246, T. D. 39076.

None of those cases supply reason for supporting plaintiff's position. Each of them presented an issue materially different from that before us, and all resulted in conclusions that cannot be applied herein. For instance, in the *Dejonge* v. *Magone* case, the Court found that

the commercial meaning for "fancy papers" included the merchandise there under consideration. The same was true in the *Langerman & Petty* case, *supra*, as it related to commercially known zinc sheets. In the *Aetna Explosives Company* case, *supra*, sulphuric acid was used with nitric acid solely to prevent corrosion of steel cars, so the Court held the importation to be "nothing more than nitric acid." The *Sheffler Merchandise Co., Inc.*, case, *supra*, turned on peculiar statutory phraseology of paragraph 331 of the Tariff Act of 1930, the court holding that the language of that paragraph included thumbtacks, wholly or in chief value of iron or steel, and was not limited to articles substantially wholly of iron or steel. In the *Rockhill & Vietor et al.* and *Bush & Co. (Inc.)* cases, *supra*, classification of hydrogenated fish oils was based on the reaction of the commodities from chemical processes.

That the present merchandise is in the form of slabs, and in chief value of zinc, is not disputed, but because the product is something more than "Zinc in * * * slabs," the descriptive provision in paragraph 394, as amended, *supra*, invoked by plaintiff, claim for classification thereunder cannot be sustained.

Accurately described, the merchandise before us is a zinc alloy, made up of four different metallic elements, deliberately mixed to definite proportions, producing a die-casting material that is actually an article of commerce, recognized in industry under the patented name "Zamak." These facts are sufficient to invoke paragraph 397 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 397), as it includes provision for articles or wares, not specially provided for, in chief value of zinc, and not plated with platinum, gold, or silver, or colored with gold lacquer.

*D. C. Andrews & Co. v. United States*, 25 C. C. P. A. 437, T. D. 49507, is in point. In that case, the merchandise consisted of a nickel catalyst, composed of nickel sulphide, nickel oxide, metallic nickel, palm oil, and kieselguhr (infusorial earth), and exclusively used "in a process of hydrogenation of vegetable oils, such as cottonseed or peanut oil, in making a vegetable lard substitute similar to Crisco and other commercial shortening products." It was classified as an article composed in chief value of nickel under paragraph 397, *supra*, and among importer's several claims was one for classification as a mixture of chemical elements, chemical salts, or chemical compounds under paragraph 5, *supra*. Said paragraph 397 was held to prevail, and in the course of its decision, the court, speaking through Bland, Judge, said:

* * * The instant merchandise is in chief value of nickel. Nickel is one of the well-known and valuable base metals. The same paragraph contains reference to the precious metals as well as base metals, other than nickel. In other words, it is a paragraph covering metal articles or wares placed in the tariff schedule of "Metals and Manufactures of" metals, and we see no reason why the

material at bar, being essentially a nickel article, should not find classification therein unless it is excluded by virtue of the so-called doctrine of susceptibility which we next propose to discuss.

The court then proceeded to hold that susceptibility of being plated with a precious metal or gold-lacquered was not essential for classification of metallic articles under said paragraph 397, and followed with a discussion of the relative specificity of paragraphs 5 and 397, in connection with which the following was said:

The term "all chemical elements, all chemical salts and compounds" is a very broad provision covering a multitude of articles. It is equally clear that "all combinations and mixtures" of chemical elements and chemical salts and compounds is an unusually broad provision. The paragraph includes a chemical element or a chemical compound. It also includes combinations (chemical and physical). It includes mixtures of chemicals as well as mixtures of compounds and also mixtures of chemical elements with the different kinds of compounds. Paragraph 397 is limited to articles or wares (and for our purposes it is not necessary to distinguish between the two terms). There are many kinds of metals which may be components of manufactured articles. The provision "articles composed wholly or in chief value of * * * nickel" covers only articles of a particular kind of metal. Unquestionably, this provision is much more specific and definite as applied to the goods at bar than is paragraph 5 (assuming that paragraph 5 describes the importation). * * *

All that was said in the *Andrews* case, *supra*, concerning the nickel catalyst there under consideration can be applied to the zinc alloy, known as "Zamak," now before us. We therefore follow the reasoning employed in that case and hold the present merchandise to be classifiable under the provision in paragraph 397, *supra*, for articles or wares, composed in chief value of zinc, not specially provided for.

The conclusion is consistent with information contained in the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for use of the Committee on Ways and Means in its consideration of adjustments in the Tariff Act of 1922. Discussing paragraph 399 of the Tariff Act of 1922 (prototype paragraph of paragraph 397 of the Tariff Act of 1930), the official publication states:

Description and uses.—Paragraph 399 embraces all finished and partly finished articles manufactured wholly or in chief value of metal and not specially provided for in other paragraphs of schedule 3. The various commodities within the scope of this paragraph may be segregated into four main groups as follows:

* * * * * * *

(2) Base metal wares.—These include manufactures of ferrous and nonferrous metals which are neither plated with precious metals nor colored with gold lacquer. * * * Others are products made from the various non-ferrous metals and alloys, such as aluminum, copper, brass, bronze, lead, nickel, zinc, pewter, tin, and other metals, compositions, and manufactures not elsewhere provided for. * * *

Having determined that the merchandise in question is provided for in said paragraph 397, provisions for nonenumerated articles,

paragraph 1559, *supra*, can have no application. *Mason* v. *Robertson*, 139 U. S. 624. Hence, there is no need for discussing plaintiff's claim for classification either by similitude or under the mixed materials clause of paragraph 1559.

Without affirming the decision of the collector, the protest is overruled and judgment will be issued accordingly.