**No. 61377.**—Naumes Forwarding Service *v.* United States, protest 274821–K/7696 (Chicago).

FORD, Judge: The suit listed above challenges the action of the collector of customs in classifying certain imported merchandise as "manufactures of metal, nspf," and levying duty thereon at the rate of 22½ percent ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Plaintiff claims said merchandise to be properly dutiable at the rate of 10 percent ad valorem under paragraph 372 of said act, as modified by the Torquay protocol to said general agreement, 86 Treas. Dec. 121, T. D. 52739, as parts of sewing machines, or at the rate of 17½ percent under paragraph 353 of said act, as modified, *supra*, as electrical wiring devices.

A sample of the subject merchandise is in evidence as exhibit 1. There is also in evidence, as illustrative exhibit 2, an illustration of how these lights are attached to the sewing machine.

At the trial, one witness, the general manager of the ultimate consignee of the subject merchandise, testified substantially as follows:

Referring to exhibit 1, he stated that "First, there is a long rubber-covered cord which is used to connect the light itself, that is the switch and socket, to the machine, which is connected to a three-way connector. Then comes a socket with a switch, then the holder." "The physical character, it is not a push type,

it is a twist type, which turns the light on and off. Then we have a holder which is attached to the machine. After the switch is the socket and the shade."

Describing how the subject merchandise, exhibit 1, is assembled on or attached to the model No. 130 sewing machine, the witness testified as follows:

Well, the sewing machine head, model 130, normally, if it does not have the adaptor, that's the sewing light, in the location where the adaptor is placed, therefore the sewing light is removed. At that spot this adaptor is placed. Therefore, there not being a light, this swivel light is attached to the right-hand side of the back part of the head as shown in this illustration.

The witness also testified that he knows of no other use for the involved merchandise, except with the model 130 Pfaff sewing machine, and that he has never seen it used in any other manner; that the swivel light cannot be readily removed after it has been affixed to the sewing machine, and the witness explained the above testimony as follows:

Any part can be removed from the machine if you wanted to remove it, but when the light is put onto the head there is a three-way connector below the balance wheel to which these two cords are put and then the light itself is connected to the head in a manner which normally fixes it to the machine.

The witness further testified that, in order to operate a sewing machine properly and safely, one would have to have a light; that the normal light that is received just by daylight or even any artificial light is not close enough to the work under the needle or the bar itself, in order to be able to see correctly or for the safety feature, and that "I do not know myself of any machine that does not have a light on it."

On cross-examination, the witness was interrogated and answered as follows, regarding the subject merchandise:

X Q. So far as the operation of the sewing machine itself goes it's not an essential part of a sewing machine?—A. To properly operate it and to safely operate the machine you would need a light in order to see the material that you are sewing on correctly. You would have to have some light on it.

X Q. But the machine will function in and of itself for the purposes for which it's designed without Plaintiff's Exhibit 1?—A. The machine will sew, the needle bar will make the needle go up and down, but the type of work it will do I do not know.

X Q. You don't claim for a moment, do you, that so far as the functional operation of the sewing machine goes that this Plaintiff's Exhibit 1 is essential to the functioning of such a machine?—A. May I give you a comparison?

X Q. No, I want an answer to that question.—A. No, properly it is not needed on the machine.

In support of his contention herein that the subject merchandise should be classified as parts of sewing machines under paragraph 372, as modified, *supra*, or as electrical wiring devices under paragraph 353 of said act, as modified, *supra*, counsel for the plaintiff, in his brief filed herein, cites *United States* v. *E. Leitz, Inc.*, 26 C. C. P. A. (Customs) 418, C. A. D. 49; *Willoughbys Camera Stores, Inc.* v. *United States*, 30 Cust. Ct. 76, C. D. 1499; and *National Carloading Corp.* v. *United States*, 44 C. C. P. A. (Customs) 77, C. A. D. 640, and also attempts to distinguish the present case from that of *Seawol Corporation* v. *United States*, 32 Cust. Ct. 392, Abstract 57818.

Counsel for the defendant, in his brief filed herein, contends that the subject merchandise is more than an electrical wiring device and, therefore, cannot find classification under said paragraph 353, and, in support of this contention, relies upon *United States* v. *Sutherland International Despatch*, 21 C. C. P. A. (Customs) 264, T. D. 46790; *Clutsom Machines, Inc.* v. *United States*, 21 Cust. Ct. 30, C. D. 1122; *M. W. Zack Metal Co.* v. *United States*. 26 Cust. Ct. 91, C. D. 1306. Counsel for the defendant also insists that the case of *National Carloading Corp., supra*,

is inapplicable and not controlling here and that the subject merchandise is not an integral, constituent, component part of a sewing machine, citing in support of this contention the *Seawol* case, *supra*.

In the *Seawol* case, *supra*, this court stated:

It is a matter of common knowledge, of which this court might well take judicial notice, that a sewing machine will operate or function as a sewing machine as efficiently with some other light as with the light or lamp here involved. As was stated by the judge before whom this case was tried:

> I can remember 60 years ago my mother ran a sewing machine, before the electric light was invented, and it was used very successfully. So that these are—very obviously these aren't absolutely essential; the court knows that.

However, it is not necessary for us to rely upon our judicial knowledge of this fact, since the testimony of plaintiffs' own witness makes it abundantly clear that any sewing machine, to which the involved lamps could or might be joined, can and does operate just as efficiently without the involved lamp as it could or would with it attached or joined thereto, provided, of course, that there is other ample light. It is not to be presumed, of course, that anyone would attempt to operate any sewing machine without sufficient light of some kind to make such operation safe and efficient.

    *       *       *       *       *       *       *

The record in this case, considered in connection with the authorities heretofore cited, makes it clear that the involved lamps are not, in a tariff sense, parts of sewing machines because they are not integral, constituent, component parts, without which the sewing machines to which they are to be attached or joined could not function as sewing machines, but rather are they in the nature of accessories for use in conjunction with sewing machines.

The present record is equally convincing that the subject lights or lamps are not, in a tariff sense, parts of sewing machines, because they are not integral, constituent, component parts, without which the sewing machines to which they are attached or joined could not function as sewing machines, but rather are they in the nature of accessories for use in conjunction with sewing machines, and we so hold.

Turning to the question of whether the subject merchandise is dutiable as electrical wiring devices under paragraph 353, as alleged by the plaintiff, it is our view that this contention is not sound. The case of *National Carloading Corp.* v. *United States, supra*, relied upon by counsel for the plaintiff, is distinguishable upon the facts from the present case. In the above case, the Court of Customs and Patent Appeals made the following statement regarding the merchandise there under consideration:

The record establishes that the imported sockets are imported chiefly but not exclusively as parts of lamps or parts of lighting fixtures; that the sockets, as illustrated by the importer's Exhibit 1, are designed to be connected to wires which supply electric current to them; that the current passes through the sockets, the switches in which are adapted to make and break the circuit, thereby controlling the passage of the current by means of push-buttons; that possibly seventy per cent of the sockets are used in connection with lamps or lighting fixtures and the remaining thirty per cent are used with extension cords.

In the present case, the merchandise consists not only of a socket, but also of a shade, an insulated rubberized cord, some 4 to 5 feet in length, plus an arm or brace, by which the article is attached to the head of the sewing machine In the *National Carloading Corp.* case, *supra*, it was pointed out that:

It is clear that Congress did not intend to include lighting fixtures in paragraph 353 but it is not clear that sockets are to be so excluded. Proposed paragraph 387, the materials within which are now classifiable under the basket clause of paragraph 397, provided for lighting fixtures, lamps, lamp bases, candelabra, any of the foregoing and parts thereof, not specially provided for. No mention whatever is made of sockets. The lower court reasons that metal sockets must fall within the scope of this provision because they may be used in

lighting fixtures and when so used can be considered parts thereof. But it is well established that if merchandise is to be classified by ultimate use (in this case, as part or parts of lighting fixtures) within a tariff designation, it must be dedicated to such use.

There is no necessity in the present case to reason that the instant merchandise must fall within the scope of paragraph 397, because it may be used in lighting fixtures, and, when so used, can be considered parts of lighting fixtures, as was done in the *National Carloading Corp.* case, *supra.* It is our view that the instant merchandise is lighting fixtures *per se,* and, as such, would have been included within the provisions of proposed paragraph 387, the merchandise within which paragraph was, by Congress, transferred to and placed within the provisions of said paragraph 397.

Based upon a consideration of this record, and for the reasons stated, we hold that the subject merchandise was correctly classified by the collector of customs as manufactures of metal, not specially provided for. All claims in the protest are, therefore, overruled. Judgment will be rendered accordingly.