(C. D. 2026)

UNITED METAL GOODS MFG. CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 18, 1958)

*Irving Savell* and *Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Henry J. O'Neill,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: This cause of action involving the seven protests enumerated in the schedule attached to and made part of this

decision presents for our determination the proper dutiable classification of importations, described in the record variously as "zinc aluminum casting metal," "zinc metal," "zinc," "zinc die casting metal," "alloy zinc metal," and "zinc alloy," which are, in fact, zinc aluminum ingots containing approximately 95 percent zinc and 5 percent aluminum, and, in some cases, there are small amounts of copper or lead present.

The collector of customs classified the merchandise as articles not specially provided for, wholly or in chief value of base metal, in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and imposed duty thereon at the rate of 22½ per centum ad valorem.

Plaintiff claims, by its protests, that the importations are properly entitled to entry free of duty pursuant to the provisions of Public Law 869, 81st Congress, 2d session, approved September 30, 1950, and 86 Treas. Dec. 27, T. D. 52656, as metal scrap, or as articles of which metal is the component material of chief value, imported to be used in remanufacture by melting. Alternatively, it is claimed that if the commodity is not entitled to free entry, then it should be classified as zinc blocks, pigs, or slabs in paragraph 394 of said act (19 U. S. C. § 1001, par. 394), as modified, *supra*, and dutiable at the rate of seven-eighths of 1 cent per pound, or at said rate, by virtue of the similitude clause in paragraph 1559 of said act (19 U. S. C. § 1001, par. 1559). A further alternative claim was made that the merchandise should be classified as a nonenumerated article pursuant to the terms of paragraph 1558 of said act (19 U. S. C. § 1001, par. 1558), or as modified, *supra*, dutiable at 5 per centum or 20 per centum ad valorem.

Defendant, in its brief, states that "Plaintiff having decided not to press and argue in support of its alternative claims under paragraphs 394, 1559, and 1558, respectively, * * * those alternative claims are treated by the Government as abandoned." Inasmuch, however, as plaintiff specifically states in its brief that the alternative claims have not been abandoned, consideration will be given to all of them.

It appears from the collector's reports attached to the protests that the importations were classified in paragraph 397, as modified, *supra*, on the authority of the decision of this court in *M. W. Zack Metal Company* v. *United States*, 26 Cust. Ct. 91, C. D. 1306, wherein an article known by the patented name "Zamak," which was, in fact, an alloy made to standard specifications to contain 95 percent zinc and 5 percent aluminum, with the possibility of copper or lead in very small amounts, was so classified.

For reasons which will presently appear, we deem it unnecessary to set forth a detailed analysis of the testimony of record. There is

no material conflict of evidence as to the salient facts. It is not disputed that the ingots presently before the court consist of metal alloys made in accordance with standard specifications of the American Society for Testing Materials, composed approximately of 95 percent zinc and 5 percent aluminum, small amounts of lead or copper, and, possibly, magnesium being used to suit certain requirements. It is likewise not disputed that the imported commodity—with the exception of the item of "Zamak" covered by entry A–3925 in protest 175556–K—is used in what the industry describes as the slush method of casting metal in the manufacture of giftware, clockcases, et cetera. In this connection, it is well established that, in applying the slush method of casting, the ingots are first reduced to a molten state. The so-called "Zamak," not being adapted for use by the slush-casting method, was not used by the plaintiff company but was exchanged by it with a local metal dealer for domestically produced unbreakable casting metal.

Confronted with the uncontradicted statement as to the composition and utility of the importations, the real question for determination is whether the commodity comes within the privilege granted by said Public Law 869, which is here set forth:

Sec. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap", as used in this Act, shall mean all ferrous and nonferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

Sec. 2. Articles of which metal is the component material of chief value, other than ores or concentrates or crude metal, imported to be used in remanufacture by melting, shall be accorded entry free of duty and import tax, upon submission of proof, under such regulations and within such time as the Secretary of the Treasury may prescribe, that they have been used in remanufacture by melting: *Provided, however,* That nothing contained in the provisions of this section shall be construed to limit or restrict the exemption granted by section 1 of this Act.

Plaintiff, as stated in its brief herein, relies primarily upon the claim for free entry pursuant to section 2 of Public Law 869, *supra.* Simply stated, plaintiff urges that since the importations are, in fact, articles of which metal is the component material of chief value, other than ores or concentrates or crude metal, and are imported to be used in remanufacture by melting, they respond literally to the language of said section 2 and, *ipso facto,* should be accorded entry free of duty and import tax, provided that it be established that the articles "have been used in remanufacture by melting."

Even granting the logic of plaintiff's argument that the imported articles of merchandise are "articles" within the broad sense attributed to that word in tariff statutes; that said merchandise was imported into this country for remanufacture by melting; and that said

articles were, in fact, so remanufactured, to come to the legal con-
clusion that said items of merchandise fall within the scope of Public
Law 869 would run counter to the legislative intent of Congress.

On the point of the legislative intent of Public Law 869, reference
is made to report No. 2259 of the Committee on Finance of the
United States Senate, 81st Congress, 2d session, wherein the following
pertinent matter appears as part of the "EXPLANATION OF THE
BILL"—

For example, under the definition of scrap steel, it is understood that the
Treasury Department has followed the practice of admitting free of duty as
"refuse" such articles as Japanese armor-plate ingots. Such ingots are deemed
to be "fit only to be remanufactured" because their peculiar composition makes
them unfit for use in the United States in their present form. The proposed
revision of the act of 1942 is intended to provide a more specific legislative basis
for classifying these and similar articles as "scrap."

The bill also adds a new section to the act of March 13, 1942, to allow the
admission free of duty of certain articles technically not included in the definition
of scrap contained in section 1 (b). The criterion for exemption from duty is
the use of the articles in question in remanufacture by melting. Entry free of
duty and import tax is granted only upon submission of proof, under regulations
prescribed by the Secretary of the Treasury, that such articles have been imported
for, and have been used in, remanufacture by melting. The new section added
to the act of 1942, therefore, would allow the admission of articles, such as surplus
war materials which are new, undamaged and not obsolete, if they are imported
for, and are used only for, remelting purposes. Since there is a guaranty that such
articles are to be used only in remanufacture by melting, they would not compete
with domestic industry to any greater extent than would articles that fall within
the definition of scrap now in the act of 1942.

For ready reference, the "act of March 13, 1942," mentioned in
the foregoing quotation, relates to Public Law 497, 77th Congress,
2d session, initiating the suspension of import duties on metal scrap,
which act was subsequently extended by Public Law 384, 80th
Congress, 1st session, and Public Law 613, 80th Congress, 2d session.

A case before this court, in which the foregoing intent and purpose
of Public Law 869 were applied, is *Harry Harris & Co.* v. *United
States*, 29 Cust. Ct. 331, C. D. 1488, which will be referred to, *infra*.

It is our opinion that it was never the intent of Congress to include
within the provisions of section 2 of Public Law 869, metal ingots,
such as those in controversy here, produced abroad to controlled
specifications for a particular purpose which, after importation into
the United States, are manufactured by the slush method of casting
metal into clock frames, giftware, and so forth.

Such ingots of unbreakable zinc casting metal clearly do not come
within the definition of "scrap" in section 1 (b) of Public Law 869 as
materials or articles which are secondhand, waste, or refuse, or are
obsolete, defective, or damaged. Neither have said ingots been
shown by the record before us to be surplus war materials which are

new, undamaged, and not obsolete, but are imported and used only for remelting purposes which the legislative history indicates was the type of "articles" Congress intended to include within the provisions of section 2 of said public law.

Moreover, it is questionable whether, as contended by plaintiff, the conversion of the unbreakable zinc casting metal ingots in controversy into clockcases and other articles constitutes a "remanufacture," within the sense of that word as used by the legislators. The evolution of crude metal, its refining, and the alloying processes to which it was subjected prior to importation, as well as the casting process from the ingot form into a finished clockcase, involved a succession and progression of manufacturing processes. It is doubted, however, that any of these processes, including the final casting process, which is of particular concern in this case, would constitute a process of "remanufacture" within the intent of Public Law 869. It is our opinion that the articles granted free entry, when imported for use in remanufacture by melting, within the purview of section 2 of Public Law 869 were articles which had been previously used, such as surplus war material which had been used in the construction of air-raid shelters in England, the subject merchandise before this court in *Harry Harris & Co.* v. *United States, supra,* and not articles like the unbreakable zinc casting metal ingots which, although admittedly articles in a broad sense, are still objects of commerce to be subjected to successive manufacturing (rather than remanufacturing) processes before reaching their final status as clockcases and giftware items.

In view of the conclusion we have reached, it is not deemed necessary to consider in detail the contention raised in brief of defendant to the effect that the controverted merchandise is not within the scope of Public Law 869, by virtue of the fact that it is composed of primary or virgin metal. "Virgin" or "primary" metal is defined in Henderson's Metallurgical Dictionary (1953), published by the Reinhold Publishing Corp., as: "Metal that has been won directly from its ore and not previously used. It is thus distinguished from **secondary metal,** * * * ." The same source gives as the definition of the latter term the following: "Previously-used metal; metal that has been recovered from scrap. * * * ." Inasmuch as it has been shown that the instant merchandise is an alloy of 95 percent zinc and 5 percent of aluminum in the condition as imported, it is more than a "metal that has been won directly from its ore." We are, therefore, of the opinion that defendant's contention in this regard is of no value.

For the foregoing reasons, we are of the opinion that it was not the intent of Congress that the merchandise before the court should be entitled to the benefit of free entry, by virtue of Public Law 869, *supra,* and the claim of plaintiff to that extent is overruled.

Consideration must now be given to plaintiff's alternative claims for classification of the importation as zinc blocks, pigs, or slabs in paragraph 394 of the Tariff Act of 1930, as modified, *supra*, at the rate of seven-eighths of 1 cent per pound, or at said rate, by virtue of the similitude clause in paragraph 1559 of said act, or as a nonenumerated article within the purview of paragraph 1558 of said act, or as modified, *supra*, for which duty at the rate of 5 per centum or 20 per centum is provided.

In the case of *M. W. Zack Metal Company* v. *United States, supra,* this court was called upon to determine the proper classification of a certain zinc alloy imported in the form of slabs. The merchandise had been classified by the collector of customs as a combination of chemical elements in paragraph 5 of the Tariff Act of 1930, and duty was imposed thereon at the rate of 25 per centum ad valorem. Plaintiff there contended the proper classification should be as zinc in slabs, dutiable at seven-eighths of 1 cent per pound, either directly under paragraph 394 of the Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, *supra,* or within the provisions of paragraph 1559 of said act, either by similitude or as a nonenumerated article composed of more than two materials.

In the *Zack* case, the parties agreed that the zinc alloy there in question was composed of approximately 95 percent zinc, 4 percent aluminum, and 1 percent copper, plus a very small amount of magnesium and impurities, and that the presence of the various components in the stated proportions was intentional and that the component material of chief value was zinc.

The court there stated—

That the present merchandise is in the form of slabs, and in chief value of zinc, is not disputed, but because the product is something more than "Zinc in * * * slabs," the descriptive provision in paragraph 394, as amended, *supra,* invoked by plaintiff, claim for classification thereunder cannot be sustained.

Accurately described, the merchandise before us is a zinc alloy, made up of four different metallic elements, deliberately mixed to definite proportions, producing a die-casting material that is actually an article of commerce, recognized in industry under the patented name "Zamak." These facts are sufficient to invoke paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as it includes provision for articles or wares, not specially provided for, in chief value of zinc, and not plated with platinum, gold, or silver, or colored with gold lacquer.

The court was of the opinion that, since the merchandise there in question was provided for in said paragraph 397, the provision for nonenumerated articles in paragraph 1559, *supra,* had no application, citing *Mason* v. *Robertson,* 139 U. S. 624. The protest was overruled, without affirming the decision of the collector.

Whereas it is true that the issues presented in the *Zack* case and the ones presently before the court are not identical, it is considered

that the reasoning of the court in the *Zack* case, insofar as it relates to the claim of plaintiff for classification in paragraph 394 or 1559 of the tariff act, has its application in the present controversy.

The instant merchandise is composed of approximately 95 percent zinc and 5 percent of aluminum to which, in some cases, very small amounts of copper, lead, or magnesium are added. The material is known in the trade as unbreakable zinc casting metal which, in order to be useful to the particular slush-casting purposes for which it is used, must conform to standard specifications.

Due to the similarity of the components constituting "Zamak" and the instant casting metal and in harmony with the views expressed by this court in the *Zack* case, *supra*, it is our opinion that the merchandise presently before the court is something more than zinc in blocks, pigs, or slabs, within the purview of paragraph 394 of the Tariff Act of 1930, as modified, *supra*, or by similitude thereto by virtue of paragraph 1559 of said act; and that said merchandise is encompassed by the provision in paragraph 397 of the tariff act, as modified, *supra*, for articles not specially provided for, wholly or in chief value of zinc, for which duty at the rate of 22½ per centum ad valorem is provided, which was the classification and the assessment determined by the collector of customs upon entry.

Inasmuch as it is the opinion of the court that the merchandise in issue comes within the provision for articles not specially provided for, in chief value of zinc, in said paragraph 397, the further alternative claim of plaintiff herein that the merchandise should be classified as a nonenumerated article in paragraph 1558 of said act is untenable.

Upon the record before us and for the foregoing reasons, all claims in the protests are overruled.

Judgment will be issued accordingly.