(C. D. 1490)

A. Tanzi Engineering Co.
Schneider Bros. & Co., Inc.  } v. United States

United States Customs Court, Second Division

(Decided December 23, 1952)

*Barnes, Richardson & Colburn (James F. Donnelly* and *Harry A. LeBien* of counsel) for the plaintiffs.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The report of the collector of customs transmitting the official papers in this case to the court states that the imported merchandise in controversy was classified as "Household food cutting utensils c/v steel" and duty was assessed thereon at the rate of 40 per centum ad valorem as provided in paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339).

The protest of plaintiffs describes the involved merchandise as "Cibol machines for fresh pastry" and claims that the merchandise is properly dutiable at 20 per centum ad valorem in accordance with the provisions of said paragraph 339, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

The pertinent language of said paragraph 339 prior and subsequent to modification is here set forth:

Paragraph 339 of the Tariff Act of 1930:

Table, household, kitchen, and hospital utensils, * * * not specially provided for: * * * composed wholly or in chief value of copper, brass, steel, or other base metal, not plated with platinum, gold, or silver, and not specially provided for, 40 per centum ad valorem; * * *.

Said paragraph 339, as modified by the General Agreement on Tariffs and Trade, *supra*:

Table, household, kitchen, and hospital utensils; * * * not specially provided for (except * * * household food grinding or cutting utensils other than meat and food choppers), * * *:
Not plated with platinum, gold, or silver, and not specially provided for:

| * | * | * | * | * | * | * |

Other:

| * | * | * | * | * | * | * |

Composed wholly or in chief value of iron, steel, copper, or antimony _____20% ad val.

Aurelio Tanzi, the only witness in the case, testified on behalf of plaintiffs. His testimony discloses that he is a machine manufacturer

and the actual importer of the merchandise in controversy, a type of merchandise which he has been importing since 1931. An article illustrating the importation was received in evidence as plaintiffs' exhibit 1. It is a relatively small, compact, and substantially constructed device, manually operated, which is described more in detail *infra*. The witness explained the use of exhibit 1 as a substitute for "all the hand work with the rolling pin" in making "Dough sheets, either for pies or cakes or noodles; for making cookies and so forth." A pamphlet and instruction sheet were received in evidence as plaintiffs' collective illustrative exhibit 2. Referring to exhibit 1, the witness described how the machine operates:

> After the flour, eggs and water is mixed roughly by hand, then it is put into the roller in lumps and these two rollers are adjustable with this lever here, it can be spread out after the dough has been put through these rollers 3 or 4 times, well then it is put through for the final thickness, according to the taste and purpose of the uses. * * *

The rollers are adjustable so that the dough can be passed through them until it becomes of uniform consistency and of the desired thickness for its ultimate use. In addition to the adjustable rollers, above described, the machine is equipped with two nonadjustable sets of cutting rollers which are utilized when it is desired to cut the dough sheets into strips of spaghetti or noodles. It appears from the record, however, that the primary function of the machine is the preparation of the dough sheets. It would, of course, be unnecessary to pass the dough sheets through the cutting rollers if, for instance, it were not the intention to make noodles or spaghetti. In fact, the device is a combination dough roller and dough-cutting machine.

To succeed in their claim that the machine in controversy is entitled to the reduced rate of duty as provided in paragraph 339, as modified, *supra*, it was incumbent upon plaintiffs to establish that the device is not within the phrase "household food  *  *  * cutting utensils," which are expressly excepted from the benefits of said paragraph. For reasons which will appear below, we believe plaintiffs have sustained their burden.

As stated in the brief for the defendant, "The collector of customs being of opinion that the involved merchandise was *cutting utensils*, applied the regular rate of 40 per centum ad valorem under paragraph 339, *supra* [of the Tariff Act of 1930]." While it is true that the machine here under consideration has two sets of nonadjustable cutting rollers, it is definitely something more than a cutting utensil for the obvious reason that primarily, by means of adjustable rollers, it converts lumps of dough into sheets of the desired thickness which may or may not be subsequently put through the cutting rollers depending upon the ultimate use to which such sheets are to be put. Being a combination rolling and cutting-machine, it cannot properly

be said to be either one or the other, but a merger of the two, constituting a machine which is well described in paragraph 339, as modified, *supra*, as a household utensil, not specially provided for, other than those specifically enumerated or excepted.

Our conclusion herein finds support in the following two cases which have been drawn to our attention in the brief of plaintiffs: *Garrard Sales Corp.* v. *United States*, 35 C. C. P. A. (Customs) 39, C. A. D. 369, and *Clutsom Machines, Inc.* v. *United States*, 21 Cust. Ct. 30, C. D. 1122.

In the *Garrard Sales Corp.* case, *supra*, certain automatic record changer units had been classified as parts of phonographs. It appears from the opinion of the court that those units could be used either in a phonograph or in a phonograph-radio combination for the purpose of automatically changing a record after it has been played; that the changer is an integral and essential part of a phonograph and radio combination without which the combination could not function as such. Furthermore, it was not disputed that without the record changer unit, the phonograph-radio combination would be just a radio set and that the device was not a part of the radio. Paragraph 4 of the syllabus in that case states that "When the record changer unit is installed in a phonograph-radio combination, the radio cannot be operated while the combination is used as a phonograph and vice versa because there is but one amplifying and one loud speaker system in the described combination and those two elements of that system are required to operate either the phonograph or the radio receiving set."

In the course of its opinion, the court observed—"It is also clear that the phonograph and the radio when combined in a single unit constitute a separate and distinct article which is something more than either. The addition of the radio to the phonograph added an important feature to the phonograph which created a new combination article which is not a phonograph or an article similar thereto within the purview of paragraph 1542," citing *Thorens, Inc.* v. *United States*, 31 C. C. P. A. (Customs) 125, C. A. D. 261. The court then went on to say—"Furthermore, a combination phonograph and radio set, such as that here involved, if imported would be dutiable as an entirety and could not properly be classified either as a phonograph or a radio." Consequently, since it appeared that the record changer units were equipped with an electric motor as an essential feature and an integral part thereof, the court held the device to be properly dutiable as an article having as an essential feature an electrical element or device.

While there are, of course, factual distinctions to be drawn between that case and the one at bar, nevertheless, the *Garrard* case embodies the principles and interpretation which have a compelling force here.

The *Clutsom* case, *supra*, presented a question whether a certain textile machine, which performed the usual function of a loom in weaving fabrics, but in addition was equipped with a permanently built-in unit which enabled the machine to perform not only a weaving process but a knitting one as well, was entitled to the benefit of the reduced rate provided in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as amended by the trade agreement between the United States and the United Kingdom, 74 Treas. Dec. 253, T. D. 49753, for textile machinery, finished or unfinished, not specially provided for (except looms). In other words, the machine did a combination of weaving and knitting. In the course of our opinion in that case, we said that "the Clutsom machines were primarily constructed and designed to knit as well as weave in the production of a single fabric, whereas a loom as commonly understood performs the single function of weaving, and that it would be impossible to use the Clutsom machine for the sole operation of weaving, or of knitting, by the addition or removal of any attachments." We were of the opinion, therefore, that the Clutsom machine is distinguished from a loom in that it has incorporated therein as an integral and inseparable feature a knitting unit and is, therefore, "something more than or other than a loom."

By analogous reasoning, we find and hold that a machine whose primary function is that of preparing dough in the form of sheets having a rolling unit geared for that purpose, and also having incorporated therein as an integral and inseparable feature a cutting unit to be used as occasion may require, is something more than or other than a household food-cutting utensil.

Cases other than those above referred to have been cited in the briefs of counsel and have received our attention, but we deem it unnecessary to review them here.

For the reasons set forth herein, we hold that the machine in controversy is not a household food-cutting utensil but that it is a household utensil, not specially provided for, and subject to duty at the rate of 20 per centum ad valorem as provided in paragraph 339 of the Tariff Act of 1930, as modified, *supra*.

The protest of plaintiffs making that claim is sustained and judgment will be entered in accordance with the views above-expressed.