(C.D. 2180)

Kaufman & Vinson Co. *v.* United States

United States Customs Court, Second Division

(Decided May 24, 1960)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* and *David Serko* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The merchandise involved in this protest is identified herein as a map measure compass. It was classified as a mathematical instrument, composed wholly or in chief value of metal, and not plated with gold, silver, or platinum, not specially provided for, in paragraph 360 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 360), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820, which provides for duty at the rate of 30 per centum ad valorem.

Plaintiff's principal claim is that the article is properly classifiable as a machine, not specially provided for, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by Torquay protocol, *supra*, and dutiable at the rate of 13¾ per centum ad valorem. Alternatively, plaintiff claims that the merchandise in question is dutiable at the rate of 22½ per centum ad valorem within the residuary provision in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for articles, not specially provided for, composed wholly or in chief value of base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer.

All of the evidence herein was introduced by plaintiff. An examination of a sample of the merchandise in its condition as imported shows that it is enclosed in a paper box (exhibit 1–B), about 3½ inches long and 2 inches wide, that serves as a container for the leather sheath (exhibit 1–A), holding the map measure compass (exhibit 1), which is the subject of the present controversy.

The president of the Scope Instrument Corp., Kenneth Fisher, importer of the present merchandise, described the use and operation of the map measure compass in question. It has the shape of a watch, having a circular metal case approximately 1½ inches in diameter. One side of the metal case contains a magnetic direction compass. The other side has a dial or indicator calculated to measure in inches or quarters of an inch. The article is designed for use by motorists and tourists, and also is used by operators of boats. It functions as a measuring device by means of a small metal wheel, protruding from the lower part of the circular metal case, and connected with a series of gears within the metal case. Guiding the wheel over the contour

of a line on a map causes the hand on the dial to register the length of the line in inches. By applying the scale of the map to the measurement shown on the dial, the distance between two points is calculated. For the motorist, it will be shown in statute miles; for the operator of a boat, it will be in nautical miles. The map measure compass in question makes no computation. It is merely a measuring device and the result obtained is only approximate. Emphasizing that the measurement shown on the indicator is not accurate, the witness testified as follows:

I have stated at the very beginning of my testimony that all measurements here are very approximate and while I can come within a certain, well I guess certain margin of error in inches it is not an accurate instrument in my estimation.

Based on his observation at the factory in Germany, where this map measure compass is manufactured, the witness testified that—

* * * The instrument is manufactured on an assembly-line basis. To the best of my knowledge a great deal of the parts used in the instrument are obtained from outside sources, from sub-suppliers. I have been to the factory a great many times. I have watched the assembly of it. It is put together by young ladies and with jigs and dies and tools without the slightest of precision check. They are not checked at the end for accuracy, the end of manufacture for accuracy; that they all register the same way, et cetera. The dial is—while attempts are made to line up a dial a certain way, certainly not too much attention is paid because by virtue of the price alone this item is in the gimmick class and not in the precision class.

Following a demonstration of the use of the article by the witness during the course of cross-examination, the court observed that "the tests have fairly shown here the inaccuracy of the device."

Plaintiff's second witness, Curtis Strauss, was the vice president and sales manager of the Compass Instrument & Optical Co., Inc., an importer of novelties and gadgets. His testimony showed that he sold articles, such as the map measure compass in question, to "gift and novelty shops primarily," and "to a few catalog and mail-order houses."

All of the evidence adduced herein, as above outlined, is directed toward showing the nature and the operation of the article in question as a *measuring* device. To confine our consideration of the present merchandise to its function as a measuring device would be to completely ignore the compass, and the use of the imported article as a guide for direction in travel. The map measure compass under consideration is a combination device that is so constructed as to serve two separate and distinct purposes. Its use as a measuring instrument has no relation to, or effect upon, the magnetic direction compass. Moreover, there is testimony herein to the effect that there is equal use of the device as an instrument used in connection with determining mileage, and also as a direction compass. Hence, a determination

whether the operation of the dial constitutes a mathematic instrument, as classified, or a machine, as claimed, would result in the classification of only one phase of the imported commodity. Recognition must be given to both uses of the present merchandise. In so doing, we find that it is more than a measuring instrument. It is also a magnetic direction compass. In our opinion, a map measure compass does not possess those attributes which entitle it to classification as a machine.

Cases cited by defendant in support of the collector's classification of the importation are deemed distinguishable. *Silberstein* v. *United States*, 3 Ct. Cust. Appls. 239, T.D. 32562, and *Voss Cutlery Co.* v. *United States*, 41 C.C.P.A. (Customs) 42, C.A.D. 526. The *Silberstein* case, *supra*, arose during the life of the Tariff Act of 1909, whereas the *Voss* case, *supra*, was litigated pursuant to the Tariff Act of 1930. Both cases involved penknives with a letter-opener attachment that consisted of a strip of metal riveted to the handle of the knife. Although the article there in question was recognized as something other than an ordinary penknife, the court, in the *Silberstein* and *Voss* cases, *supra*, stated that it was still a knife, and a knife which had "folding or other than fixed blades or attachments," within the meaning of that provision in paragraph 152 and paragraph 354 of the Tariff Acts of 1909 and 1930, respectively. The merchandise in those cases was held to be classifiable accordingly. No comparable condition exists in the present case.

Our approach to the question presented herein, as well as our disposition of the issue, makes it unnecessary to discuss other cases cited in the briefs of counsel for the respective parties.

Since the combination article in question, a map measure compass, is concededly in chief value of base metal and not specially provided for, it is, therefore, properly classifiable pursuant to the residuary provisions of paragraph 397 of the Tariff Act of 1930, as modified, *supra*, and dutiable at the rate of 22½ per centum ad valorem. That claim in the protest is, therefore, sustained. All other claims are overruled.

Judgment will be issued accordingly.