UNITED CARR FASTENER CORPORATION *v.* UNITED STATES (NORTHERN SCREW CORP., PARTY IN INTEREST) (No. 5256)*

United States Court of Customs and Patent Appeals, May 11, 1967

*Brooks & Brooks* (*Thomas J. McKenna*, of counsel) for appellant.

*Barefoot Sanders*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Steven R. Sosnov* for the United States.

*Barnes, Richardson & Colburn*, Amicus Curiae (*Joseph Schwartz*, of counsel).

[Oral argument April 5, 1967 by Mr. McKenna and Mr. Sosnov]

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

The issue here is whether certain importations are more properly classified as a manufacture of metal,[1] n.s.p.f., as claimed by the appellant or as nuts of steel,[2] as classified by the customs collector. The Customs Court overruled the protest, 56 Cust. Ct. 347, C.D. 2648, hence this appeal.

The importations, invoiced as "TEE-NUTS," were imported by Northern Screw Corp. Pursuant to section 516(b), Tariff Act of 1930, appellant filed a protest after liquidation proceedings concerning said importations. According to the court below, the record establishes full compliance with section 516(b) (19 USC 1516(b)). It appears from the protest as filed that appellant is an American manufacturer of articles "of the class or kind" here imported. We have the benefit here of the views of the appellant, the United States-appellee, and of the amicus curiae. The latter appears on behalf of or expresses the views of "HEADS and THREADS, Division of MSL Industries, Inc., * * * an importer of various kinds of nuts" which views agree with the result reached by the court below and the appellee's position here.

The importation and its operation is described in detail in the lower court's opinion as follows:

The evidence discloses that the so-called "TEE NUT" is stamped or shaped into the circular form resembling a "T" from cold-rolled steel strip. The hollow

---

*C.A.D. 913.

[1] Paragraph 397, Tariff Act of 1930, as modified, T.D. 54108.

[2] Paragraph 330, Tariff Act of 1930, as modified, T.D. 51802.

stem portion of the "T," termed a barrel, is tapped internally with a female thread for the purpose of enabling the barrel to receive and retain the male thread of a bolt. And from and around the edges of the crossmember of the "T," called a flange, three or four prongs are sheared out and turned or bent at right angles to the flange in a direction parallel to the barrel. When the article is viewed from above and over the crossmember, the pronged flange gives the appearance of being an outer circle and the tapped barrel the inner circle. When manufacture is completed, the so-called "TEE NUT" comprises in all of its parts an article of hardware composed of a single piece of steel. The article is made in various sizes and thread specifications to suit particular applications. In use, the "TEE NUT" is inserted barrel first up to the tip of the prongs into a hole previously drilled into a wood object to accommodate the barrel. The flange is then driven into the wood to the depth of the prongs so that the flange is flush with the surface of the wood. (Not all so-called "TEE NUTS" are made for wood applications. One type, depicted in defendant's exhibit M and designated a weld and rivet "T" nut, is used in metal applications.) In this position the "TEE NUT" is secured to the wood, is immovable, and provides the link in the joining together of two pieces of wood.

A now common exponent of the aforesaid method of joining pieces of wood together is shown in plaintiff's illustrative exhibit 17. The exhibit consists basically of two parts of wood—one piece representative of a table and the other representative of a supporting leg of the table—and two articles of hardware, namely, a bolt and a "TEE NUT." The bolt is mounted in and secured to the broad end of the tapered circular leg, and the "TEE NUT" is secured to the block of wood in the manner hereinbefore described. The leg, thus armed, may be screwed into the block of wood through the "TEE NUT" which remains stationary and secured to the block of wood to which it is attached. In this manner, the leg is joined to the table. And by a reverse screw action, the leg may be disassembled from the table. At no time during either the assembly or disassembly of the pieces of wood does it become necessary to touch or manipulate the "TEE NUT" with hand or tool.

The issue presented was stated to be:

The issue in this case is whether the imported merchandise is a "nut" within the meaning of the *eo nomine* provision for nuts in paragraph 330, or whether it is something more than a nut, a combination article as plaintiff contends, and classifiable as such under paragraph 397. * * *

The lower court first turned to various dictionary definitions of the term "nut." It then construed the testimony of record as follows:

In the instant case, the testimony indicates that the "TEE NUT" came into vogue as a labor and timesaving device in joining objects together, replacing an older, obsolete method of doing the same thing. What appeared to be uppermost in the minds of users of nuts and bolts, according to evidence of record, was the development of a faster, more efficient method of joining components together by means of nuts and bolts, the solution to which problem was apparently found in the evolution of the "TEE NUT". In other words, users of the article were not concerned with the design and creation of a new article of commerce, unrelated to problems and obstacles of past experiences. Hence, shape characteristics of the evolved "TEE NUT" are expressly by design related to such experiences in industries using nuts and bolts as a means of joining component parts together. Single-mindedness of purposes as a holding device was preserved through evolution of the "TEE NUT" as a replacement article. The

fact that a function, previously performed by a washer, which at best is but auxiliary when associated in use with a nut, was eliminated in this evolutionary process, contributed to the improvement of, rather than a change in identity of the article as a nut, in our opinion. And the further fact that the evolved "TEE NUT" took on the added character of immobility does not, in our opinion, militate against the article continuing to be a species of nut. According to some of the above noted definitions, shape (square or hexagonal) of a nut is a condition facilitating the manipulation of the article. And this condition of maneuverability was simply improved upon in the evolution of the "TEE NUT".

The lower court considered the facts of the instant case to be similar to and controlled by the following cases wherein steel pry bars were held to be crowbars and not articles, n.s.p.f., in chief value of iron or steel (*United States* v. *National Carloading Corp. et al.*, 48 CCPA 70, C.A.D. 767); lock washers were held to be steel washers and not manufactures of steel, n.s.p.f. (*United States* v. *Motor Car Equipment Co.*, 3 Ct. Cust. App. 77 T.D. 32355); steel U shaped railroad spikes were held to be spikes, n.s.p.f., and not articles, n.s.p.f. (*H. T. Kennedy Co., Inc. et al.* v. *United States*, 32 Cust. Ct. 124, C.D. 1593); and railroad screw spikes were held to be spikes (*C. S. Emery & Co.* v. *United States*, 64 Treas. Dec. 1135, T.D. 26313).

The lower court applied the above cases as follows:

* * * In these cases, the shape characteristics of the imported article suited it to perform functions over and above that performed by the article as to which *eo nomine* tariff classification was sought. The courts found that the articles should be given their claimed *eo nomine* classification notwithstanding the existence of additional features and capabilities in the articles in question. The same approach to classification of the "TEE NUT" in the instant case should be made as was made in the aforementioned cases. For the reasons stated, we hold that the involved "TEE NUT" is a species of nut within the ambit of paragraph 330, and that the collector's classification of the "TEE NUT" **as a nut** under that paragraph was correct. * * *

Appellant here argues that the importations possess features substantially in excess of those within the common meaning of the term nuts and consequently are excluded from classification under par. 330. In support of this position appellant relies on cases wherein a combination radio-phonograph was held not classifiable as either a radio or a phonograph (*Garrard Sales Corp.* v. *United States*, 35 CCPA 39, C.A.D. 369) galvanized steel strips were held classifiable as manufactures of metal and not as steel strips (*Hirsch & Co.* v. *United States*, 4 Ct. Cust. App. 82, T.D. 33365), a two component nail and screw was held not classifiable as a nail (*Krueger & Hogh* v. *United States*, 2 Cust. Ct. 68, C.D. 88) steel pipe with attached aluminum fins was held classifiable as manufactures of metal and not as steel tubes (*Baker Ice Mach. Co.* v. *United States*, 4 Cust. Ct. 22, C.D. 274), brass channels lined with felt were held not classifiable as brass channels (*United States* v. *Sutherland Int'l Dispatch*, 21 CCPA 264, T.D. 46790), glass

disks for goggles were classifiable as manufactures of glass and not as cylinder glass (*United States* v. *Strauss & Buegeleisen*, 20 CCPA 378, T.D. 46184) a weaving and knitting machine was not classifiable as a loom (*Clutsom Mach., Inc.* v. *United States*) 21 Cust. Ct. 30, C.D. 1122) a zince alloy was not classifiable as zince slabs (*M. W. Zack Metal Co.* v. *United States*, 26 Cust. Ct. 91, C.D. 1306) a combination rough rolling and cutting machine was held not classifiable as either a rolling or cutting machine (*A. Tanzi Eng'r Co.* v. *United States*, 30 Cust. Ct. 4, C.D. 1490), a fish canning machine was held not classifiable as a food-cutting machine (*B. R. Anderson & Co.* v. *United States*, 30 Cust. Ct. 420, Abs. 57258) iron tubes within brass tubes were held classifiable as manufactures of metal and not either as brass tubes or as brass iron tubes separately (*Kroder Reubel Co.* v. *United States*, 42 Cust. Ct. 149, C.D. 2079), and a combination measuring device and compass was held classifiable as a manufacture of metal and not as a mathematical instrument (*Kaufman & Vinson Co.* v. *United States*, 44 Cust. Ct. 238, C.D. 2180). The lower court considered the above cases but held them inapplicable in view of the cases it relied on, supra.

The rule governing designations of an eo nomine character is set forth in *Nootka Packing Co.* v. *United States*, 22 CCPA 464, 470, T.D. 47464:

> The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

And the rule governing the determination of the common meaning of a tariff term is set forth in *United States* v. *John B. Stetson Co.*, 21 CCPA 3, 9 T.D. 46319:

> * * * The common meaning to be attached to a term or word used by the Congress in a provision of a tariff act is a matter to be determined by the court having the same under consideration. In making this determination the court may rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. If testimony be offered upon the common meaning of a statutory word or term such testimony is advisory only and has no binding effect on the court. *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T.D. 42219; *United States* v. *Felsenthal*, 16 Ct. Cust. Appls. 15, T.D. 42713; *United States* v. *May Department Stores*, 16 Ct. Cust. Appls. 353, T.D. 43090; *United States* v. *Moscini*, 19 CCPA (Customs) 144, T.D. 45261. This is true whether the court be *nisi prius* or appellate.

Appellee urges the lower court properly applied the above two rules in arriving at its conclusion.

We have examined the samples of exhibits presents below. We also have considered all of the authorities relied on by the respective parties. We are of the view that the lower court did not err in its con-

clusion. Considering as a whole the precedents relied on by both appellant and appellee, the judgment of the lower court is *affirmed* for the reasons stated therein.