**MITA COPYSTAR AMERICA, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 97–73.
Court No. 93–03–00159.

United States Court of International Trade.

June 4, 1997.

Grunfeld, Desiderio, Lebowitz & Silverman, L.L.P., New York City (Steven P. Florsheim), for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara M. Epstein); Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Beth C. Brotman), New York City, of counsel, for defendant.

Neville, Peterson & Williams, New York City (John M. Peterson and George W. Thompson), for Amici Curiae Katun Corporation and Xerox Corporation.

## *OPINION*

GOLDBERG, Judge.

This matter is before the Court on cross-motions for summary judgment. It involves the proper tariff classification of toner cartridges imported at various times between 1990 and 1992 for use in Mita electrostatic photocopy machines. The subject toner cartridges are made of plastic and cardboard in various shapes and sizes. The toner cartridges do not contain any electrical contacts or moving parts, and are generally simple in design. Each cartridge contains between 50 and 1000 grams of toner, the black powder used by photocopiers to produce an image on paper.

The United States Customs Service ("Customs") classified the imported merchandise as "chemical preparations for photographic uses," under subheading 3707.90.30 of the Harmonized Tariff Schedule of the United States (1992)("HTSUS"), dutiable at 8.5% *ad valorem*. Plaintiff, Mita Copystar America, Inc. ("Mita"), challenges the classification, arguing that the toner cartridges should be classified as "parts and accessories of electro-static photocopying apparatus," under subheading 9009.90.30, HTSUS, or alternatively, as "parts and accessories" of "other office machines" under subheading 8473.40.40, HTSUS. Under plaintiff's proposed classification, the goods enter duty free.

After evaluating Customs' and Mita's proposed classifications, the Court finds that both proposed classifications accurately describe different aspects of the subject merchandise. Thus, the Court has resolved the matter according to the General Rules of Interpretation, holding that toner cartridges are properly classified as "chemical preparations for photographic uses," under subheading 3707.90.30, HTSUS.

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a)(1988).

## *STANDARD OF REVIEW*

When faced with a motion for summary judgment, the Court must determine whether a case presents any genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). If a case presents no such issues, and a moving party is entitled to a judgment as a matter of law, the Court may grant summary judgment. USCIT R. 56(d). Since the Court has determined that this case presents no genuine issues of material fact, granting summary judgment is appropriate.

█ In order to determine the proper classification of a given import, the Court considers whether Customs' classification is correct, both independently, and in comparison with the importer's alternative classification. *Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984).

## *DISCUSSION*

### A. CLASSIFICATION AS A CHEMICAL PREPARATION

█ Drawing on this Court's decision in *Mita Copystar Corp. v. United States*, 17 CIT 374, 1993 WL 179285 (1993)("*Mita I*"), *aff'd*, —— Fed. Cir. (T) ——, 21 F.3d 1079 (1994), Customs classified the subject merchandise as "chemical preparations for photographic uses," under 3707.90.30, HTSUS.

Customs contends that *Mita I* controls the instant case because it established the appropriate classification of the toner cartridges at issue. While the Court finds *Mita I* relevant, the Court cannot agree that *Mita I* controls the instant case.

In *Mita I*, the Court decided an entirely different question than the one before it today. Specifically, the Court in *Mita I* resolved whether the toners and developers used in photocopy machines were properly classified as "chemical preparations" or as "[u]nmixed products." *Mita I*, 17 CIT at 374. Consequently, the Court focused solely on the nature of toners and developers as chemicals. However, the issue today is whether a toner cartridge constitutes a "part" or "accessory" of a photocopy machine. This issue was neither argued by the parties nor considered by the Court in *Mita I*. Hence, the Court concludes that *Mita I* does not, as a matter of law, resolve the question now presented. Rather, the Court relies on *Mita I* for the limited purpose of determining the proper classification of the toners and developers contained in the cartridges of the present case.

Because Chapter 37 does not restrict or limit how these chemicals may be packaged, the Court finds the subheading classification broad enough to encompass toner packaged in cartridges. The Court also finds that the toners and developers of *Mita I* are the same chemical preparations contained in the cartridges at issue here, and thus concludes that the toner cartridges at issue here may be properly classified under subheading 3707.90.30, HTSUS.

## B. CLASSIFICATION AS PARTS AND ACCESSORIES OF ELECTROSTATIC PHOTOCOPYING APPARATUS

█ Mita challenges Customs' classification, contending that the toner cartridges should be classified as "parts and accessories of electrostatic photocopying apparatus," under subheading 9009.90.30, HTSUS, or alternatively as other "parts or accessories" of "other office machines" under subheading 8473.40.40, HTSUS. The Court finds Mita's contention persuasive.

In a recent Federal Circuit opinion, *Bauerhin Tech. Ltd. Partnership v. United States,* —— Fed. Cir. (T) ——, —— – ——, 110 F.3d 774, 778–79 (1997), the Federal Circuit employed two prominent customs cases, *United States v. Willoughby Camera Stores,* 21 C.C.P.A. 322, 1933 WL 1887 (1933), and *United States v. Pompeo,* 43 C.C.P.A. 9, 1955 WL 6859 (1955), as standards when it decided whether an article legally constitutes a "part." Under *Willoughby Camera,* a part is an item that is "an integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article." *Bauerhin Tech. Ltd.,* —— Fed. Cir. (T) at ——, 110 F.3d at 778 (quoting *Willoughby Camera,* 21 C.C.P.A. at 324). Under *Pompeo,* "an imported item dedicated solely for use with another article is a 'part' of that article within the meaning of the HTSUS." *Id.* at 779 (citing *Pompeo,* 43 C.C.P.A. at 13). The Federal Circuit also instructed that although these cases provided different standards, they were not inconsistent and "must be read together." *Id.*

It is undisputed that a photocopier could not function as such without a toner cartridge. Hence, the cartridges function as an integral part under *Willoughby Camera.* It is also undisputed that the toner cartridges were dedicated solely for use with Mita photocopiers. Thus, the toner cartridges also meet the *Pompeo* standard. Therefore, the Court concludes that under the standards set forth in *Bauerhin Tech.,* the toner cartridges are properly considered parts under the HTSUS. *See also Mattel, Inc. v. United States,* 61 Cust. Ct. 75, 82 n. 5, 287 F.Supp. 999, 1004 n. 5 (1968) ("[I]t is of course obvious that if an item is dedicated solely for use on a particular article and is essential to the functioning of that article, it is *a fortiori* a 'part' of that article."); *Bruce Duncan Co. v. United States,* 63 Cust. Ct. 412, 1969 WL 13830 (1969) (holding that imported butane cartridges were properly classified as parts of cigarette lighters because these specially-designed cartridges were necessary for the operation of the lighter).

Moreover, lexicographic and scientific authorities bolster Mita's proposed classifica-

tion.[1] A part may be defined as an essential portion or integral element of something. *Webster's Third New International Dictionary of the English Language Unabridged* 1645 (1986). A part may also be defined as an element of a subassembly that is not normally useful by itself. *McGraw–Hill Dictionary of Scientific and Technical Terms* 1167 (3rd ed. 1984). The Court finds that Mita's toner cartridges come within the scope of both definitions. A toner cartridge is an essential portion or integral element of a photocopier because the machine cannot perform its intended function without one. A toner cartridge is also a subassembly not normally used by itself.

An accessory, in turn, may be defined as a part or subassembly that contributes to the effectiveness of a piece of equipment without changing its basic function. *Id.* at 10. Toner cartridges satisfy the accessory definition as well because they contribute to the effectiveness of the photocopier without changing its basic function. Thus, the Court finds that these authorities likewise support Mita's argument that a toner cartridge constitutes a part and accessory of the photocopy machine.

Because the toner cartridges meet the criteria established both by case law and by lexicographic authorities, the Court finds that the toner cartridges may also be properly classified as "parts and accessories of electrostatic photocopying apparatus," under subheading 9009.90.30, HTSUS.[2]

## C. RESOLUTION ACCORDING TO THE GENERAL RULES OF INTERPRETATION

■ Because the Court finds that both Customs' and Mita's classifications accurately describe different aspects of the subject merchandise, the Court turns to the General Rules of Interpretation ("GRI") in order to determine the tariff classification.

GRI 1 instructs the Court to classify an item according to the terms of the headings and any relevant section or chapter notes and, provided that these headings or notes do not require otherwise, according to the remaining Rules of Interpretation. In accordance with GRI 1, the Court first looks to the section and chapter notes of the HTSUS for Chapter 37, covering "chemical preparations for photographic uses." The Court next looks to the section and chapter notes of the HTSUS for Chapter 90, pertaining to "parts and accessories of electrostatic photocopying apparatus."

Beginning with Chapter 37, the Court finds that Section VI, note (2) applies to the subject merchandise. This note requires goods classifiable under heading 3707 "by reason of being put up in measured doses or for retail sale are to be classified in [that] heading[ ] and in no other heading of the tariff schedule." [3] This section note applies to the subject merchandise because the toner is both sold in measured quantities, and packaged for retail sale.[4] Therefore, the Court finds that the toner cartridges meet the conditions set forth in section note (2). Accordingly, the Court concludes that section note (2) calls for the classification of the subject merchandise under heading 3707, HTSUS.

Turning to Chapter 90, the Court finds that chapter note 2(b) also applies to the subject merchandise.[5] Chapter note 2(b) provides that "[o]ther parts and accessories,

1. The Court may rely on lexicographic and scientific authorities to determine the proper classification of a subject import. *See Brookside Veneers, Ltd. v. United States,* 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789 (1988).

2. The Court rejects Mita's alternative classification as "parts or accessories" of "other office machines" under 8473.40.40, HTSUS, because Mita's first proposed classification, "electrostatic photocopying apparatus," more specifically describes the subject merchandise. Therefore, the heading for "other office machines" cannot apply.

3. The Court notes that Chapter 37 does not provide any relevant chapter notes. The Court therefore limits its discussion to the relevant section notes.

4. Retail is defined as "[t]he sale of goods directly to consumers, usually in small quantities." *The Random House Dictionary* 753 (1992).

5. The Court notes that Section XVIII does not provide any section notes relevant to this classification. Thus, the Court limits this portion of its discussion to chapter notes.

if suitable for use solely or principally with a particular kind of machine, instrument or apparatus ... are to be classified with the machines, instruments or apparatus of that kind." As noted above, the Court has found that toner cartridges constitute "[o]ther parts and accessories" of the electrostatic photocopying apparatus of Chapter 90. It is also undisputed that these toner cartridges are suitable for use solely with particular models of Mita photocopiers. Thus, chapter note 2(b) applies to the subject merchandise, and instructs the Court to classify the subject merchandise under Chapter 90.

These two notes present the Court with conflicting directives because each note requires classification of the subject merchandise under a different chapter. Since there is no basis for this Court to select the instructions of one note over those of another, the classification cannot be resolved according to the instructions of GRI 1. Therefore, the Court must apply the next relevant rule, GRI 3.

GRI 3 governs those situations in which "goods are, *prima facie,* classifiable under two or more headings." In such situations, GRI 3(a) instructs the Court to choose the heading that provides a more specific description over a heading that only provides a general description. Here, the Court finds that neither classification provides a more specific description. Rather, each classification describes a different aspect of the subject merchandise. Customs' classification as "chemical preparations for photographic uses" describes the toner. However, Mita's classification as a part or accessory of a photocopier describes the cartridge, focusing primarily on the packaging. Therefore, the Court finds that GRI 3(a) is not dispositive.

The Court next turns to GRI 3(b). According to GRI 3(b), composite goods made up of different components, which cannot be classified under GRI 3(a), are to be classified as though they consisted of the material or component that gives them their "essential character." Since the Court finds that a toner cartridge falls within this rule, the Court now turns to the issue of essential character.

According to Explanatory Note (VIII) to GRI 3(b):

> The factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods.

Of the various factors suggested in Explanatory Note VIII, the essential character of a toner cartridge is best evaluated on "the role of a constituent material in relation to the use of the goods." The basic function of a toner cartridge is to supply toner to the photocopier as efficiently and effectively as possible. In this context, the toner is the principle product. Although packaging the toner in cartridges enhances the efficiency of toner delivery and prevents spills during installation, the cartridge only plays an auxiliary role in the process. These improvements in container design, although beneficial, do not change the basic character of the subject merchandise. *See United Carr Fastener Corp. v. United States,* 54 C.C.P.A. 89, 91, 1967 WL 8910 (1967). Thus, the Court finds that the toner is the component that provides the toner cartridge with its essential character. As a result, pursuant to GRI 3(b), the Court concludes that the subject merchandise is properly classified as "chemical preparations for photographic uses."

### CONCLUSION

For the foregoing reasons, the Court holds that the toner cartridges at issue are properly classified under subheading 3707.90.30, HTSUS. Judgment will be entered accordingly.